In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00100-CV


______________________________




CELANESE LTD., f/k/a HOECHST CELANESE


CHEMICAL GROUP, LTD., Appellant



V.



CHEMICAL WASTE MANAGEMENT, INC. AND


WASTE MANAGEMENT INDUSTRIAL


SERVICES, INC., Appellees




 


On Appeal from the 269th Judicial District Court


Harris County, Texas


Trial Court No. 1999-25373




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Celanese Limited, formerly known as Hoechst Celanese Chemical Group, Ltd.
(Celanese) appeals from a judgment in its favor following a jury trial. Celanese sued
Chemical Waste Management, Inc. and Waste Management Industrial Services, Inc.
(Waste Management) for negligence, fraud, and breach of contract. The jury awarded
Celanese 1.7 million dollars based on a finding that Waste Management was negligent, but
found no fraud or breach of contract. The jury also refused to award punitive damages. 
Celanese argues that the jury's damage award is wholly inadequate and unsupported by
the evidence, that the trial court erred by refusing to submit its claim for malice to the jury,
and that the jury question regarding the measure of damages incorrectly informed the jury
about the scope of available damages. 

 Celanese owns and operates a chemical manufacturing and processing plant. It
installed a reactor designed to produce acrylic acid at its Clear Lake facility. The reactor
is described as a vertical, two-stage, multi-tubed device built primarily from carbon steel. 
It operates by running gas through "catalyst-filled" tubes in the interior of the reactor. The
first stage contains 22,000 vertical tubes, the ends of which are welded into two horizontal
plates (tubesheets). The second stage also contains 22,000 vertical tubes welded into two
different tubesheets. Those tubes are filled with a different catalyst which completes the
chemical transformation. The reactor operates at over 500 degrees Fahrenheit. The
temperature is maintained by circulating a molten salt solution around the tubes. If the
solution gets into the catalyst, the process is degraded.

 Celanese sued Waste Management because it believed that Waste Management,
while cleaning the new reactor and preparing it for operation, failed to do so correctly,
thereby causing damage to the welds. This lawsuit therefore involves allegations of
damage to a number of the 88,000 welds connecting the ends of the tubes and the
tubesheets. 

 In detail, Celanese states it hired Waste Management to run a chemical cleaner
through the reactor to remove rust and then to run another chemical through the reactor
to "passivate" the inside surface of the reactor. The purpose of "passivation" is to lower
the surface reactivity of the metal to the chemicals that would later be used in the reactor
by creating a protective "passive" layer on the metal's surface. In effect, this is a corrosion
inhibitor.

 Waste Management took the position at trial that it had used adequate procedures
and materials, and one of its expert witnesses, William O'Donnell, testified it was
Celanese's own improper break-in procedures, involving extreme and improper
temperature changes, that caused leaks in the new reactor. It is undisputed that the
reactor was repaired and thereafter operated by Celanese.

 The jury found Waste Management and Celanese each fifty percent negligent, and
found damages in the amount of 1.7 million dollars. The jury also found Waste
Management did not breach its contract with Celanese and did not commit fraud against
Celanese.

 Celanese first contends the evidence does not support the jury's 1.7 million dollar
award under Jury Question 3. It relies on expert testimony and opinion at trial that it
contends establishes a range of lost market value for the reactor of between 2.9 and 20
million dollars. Therefore, it argues, there is no evidence to support the jury's award and
we should return the case for a new trial. 

 Jury Question 3 and the related instructions read as follows:

 What is the difference in the market value in Harris County, Texas, of
the R-59 Reactor owned by Celanese immediately before and immediately
after the occurrence in question?


 "Market value" means the amount that would be paid in cash
by a willing buyer who desires to buy, but is not required to buy, to a
willing seller who desires to sell, but is under no necessity of selling.

 Do not reduce the amount, if any, in your answer because of the
negligence, if any, of Celanese.


 In answering questions about damages, answer each question
separately. Do not increase or reduce the amount in one answer because
of your answer to any other question about damages. Do not speculate
about what any party's ultimate recovery may or may not be. Any recovery
will be determined by the court when it applies the law to your answer at the
time of judgment. Do not add any amount for interest on damages, if an[y].


 Answer in dollars and cents for damages, if any.

As stated above, the jury's answer to this question was 1.7 million dollars.

 Celanese, as the plaintiff, had the burden of proof. Its argument is that the jury's
finding was against the great weight and preponderance of the evidence or that the
contrary position was proven as a matter of law. In our review, we weigh all the evidence
and set aside the jury's adverse finding only if it is so contrary to the overwhelming weight
and preponderance of the evidence as to be clearly wrong and manifestly unjust. Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986). 

 Celanese focuses its argument about damages on the testimonies of its expert and
the expert witness of Waste Management. Without admitting a reduction in capacity,
Waste Management's expert, Rodney Sowards, testified that, assuming the production
capacity of the reactor had been reduced by fifteen percent as a result of the damage and
repairs, the loss in value of the reactor was approximately 3.4 million dollars and that,
assuming the life expectancy of the reactor was diminished, the loss in value was
approximately 2.9 million dollars.

 Celanese's expert, Herbert Lyon, testified the reactor had a value of approximately
23.5 million dollars before the damage and about 3.2 million dollars afterward-for a loss
of approximately 20 million dollars. 

 The jury rejected Sowards' opinion of 2.9 million dollars in lost market value, as well
as Lyon's opinion of 20 million dollars. This does not mean, however, there is no evidence
to support the jury's finding. There was also evidence it cost approximately 1.7 million
dollars to repair the reactor. The experts' opinions of lost market value were based on
assumptions the jury was entitled to reject. If these assumptions were discounted, the jury
was left with the cost of repair which, as explained below, is some evidence of loss of
market value. 

 There was also evidence that, after the repairs, the reactor had operated at or
"marginally above" targeted design rates and that shutdowns of the reactor were not due
to leaks. The primary objective in awarding damages in civil cases is to compensate the
injured plaintiff, not punish the defendant. Cavnar v. Quality Control Parking, Inc., 696
S.W.2d 549, 552 (Tex. 1985). When personal property has been damaged, the general
rule is that the damage is to be measured by the difference in the reasonable market value
immediately before and immediately after the damage to such property. However, different
factual situations sometimes require a different measure of damages. Pasadena State
Bank v. Isaac, 149 Tex. 47, 228 S.W.2d 127, 128 (1950); Cent. Freight Lines, Inc. v.
Naztec, Inc., 790 S.W.2d 733, 734 (Tex. App.-El Paso 1990, no writ).

 If a damaged device can be repaired adequately and fully, the difference in value
before and after the damage to the item can be defined as the cost of the repairs. (1) The
caselaw clearly provides that, where property has sustained damage which diminishes its
fair market value, the cost of repairing or restoring the property to its full market value is
an appropriate element of damage. Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.,
839 S.W.2d 866, 875 (Tex. App.-Austin 1992), rev'd on other grounds, 896 S.W.2d 156
(Tex. 1995); see Ortiz v. Flintkote Co., 761 S.W.2d 531, 536 (Tex. App.-Corpus Christi
1988, writ denied); Greene v. Bearden Enters., Inc., 598 S.W.2d 649, 653 (Tex. Civ.
App.-Fort Worth 1980, writ ref'd n.r.e.).

 These cases involve both real and personal property, and there is no apparent
reason to draw any distinction in this context. We note that, where realty is concerned, the
difference is often described as the difference between permanent damage and temporary
(or rectifiable) damage. (2)
 In both personal and real property contexts, however, the cost of
repairing the damage and returning the item or property to its full function is a factor for
consideration to be used in determining the change of value in the property before and
after the damage.

 Where an injured party chooses to repair damaged items, evidence of the cost of
repair is both relevant and material and provides support, not for an alternative measure
of damages, but for proof of the difference in fair market value. Cent. Freight Lines, Inc.,
790 S.W.2d at 734-35; see Boies v. Norton, 526 S.W.2d 651, 653 (Tex. Civ. App.-Austin
1975, writ ref'd n.r.e.); Horton v. Schultz, 148 S.W.2d 252, 253 (Tex. Civ.
App.-San Antonio 1941, no writ). We further conclude that, under these facts, the cost of
repair, when viewed in conjunction with the condition of the repaired object, can provide
the necessary evidence to support the jury's finding on change in market value.

 The jury in this case had evidence before it that would allow it to determine that the
loss in fair market value was 1.7 million dollars, the amount necessary (and used) to repair
the device and return it to full functionality. This is some evidence in favor of the verdict,
and the jury's finding was not made against the great weight and preponderance of the
evidence. This contention of error is overruled.

 Celanese next contends the trial court erred by failing to submit its "malice" question
to the jury in connection with its punitive damage claim. Malice is defined by Tex. Civ.
Prac. & Rem. Code Ann. § 41.001(7)(B) (Vernon 1997) as an act or omission which
involves an extreme degree of risk about which the party had actual, subjective awareness
but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of
others.

 This issue involves the distinction drawn between malice (or gross negligence) and
negligence. The definition of malice, like its common-law ancestor "gross negligence,"
consists of two prongs. (3) The first describes what Texas courts refer to as the objective
prong, and the second defines the subjective prong. Wal-Mart Stores, Inc. v. Alexander,
868 S.W.2d 322, 325-26 (Tex. 1993) (discussing gross negligence). 

 Malice involves more culpable conduct than ordinary negligence with respect to both
elements. Id. at 326. Objectively, the defendant's conduct must involve an extreme risk
of harm, a threshold significantly higher than the objective reasonable person test for
negligence. Id. Subjectively, the defendant must have actual awareness not just of risk,
but of an extreme risk created by the conduct. See Transp. Ins. Co. v. Moriel, 879 S.W.2d
10, 22 (Tex. 1994).

 A party is entitled to a jury question, instruction, or definition if the issue is raised by
the pleadings and the evidence. Tex. R. Civ. P. 278. If we determine an error exists, we
then consider the pleadings, the evidence presented at trial, and the charge in its entirety
in determining whether the error merits reversal. Island Recreational Dev. Corp. v.
Republic of Texas Sav. Ass'n, 710 S.W.2d 551, 555 (Tex. 1986). Error in the charge is
reversible only if harmful, that is, if it caused or was reasonably calculated to cause, and
probably did cause, the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1);
Island Recreational Dev. Corp., 710 S.W.2d at 555.

 A court must submit questions, instructions, and definitions raised by the pleadings
and the evidence. Tex. R. Civ. P. 278; Elbaor v. Smith, 845 S.W.2d 240, 243 (Tex. 1992). 
A trial court may refuse to submit a question only if no evidence exists to warrant its
submission. Elbaor, 845 S.W.2d at 243. If there is some evidence to support a jury
question and the court does not submit the question, the court commits reversible error. 
Id. In determining whether a trial court should have submitted a question to the jury, the
reviewing court must examine the record for evidence supporting submission and ignore
all evidence to the contrary. Id. Conflicting evidence presents a fact question for the jury. 
Id. 

 Only issues raised by the evidence are to be submitted to the jury. Tex. R. Civ. P.
278. Whether a question is raised by the evidence is to be determined by the same
standard that applies to the determination of whether an instructed verdict should be given.
Sanchez ex rel. Estate of Galvan v. Brownsville Sports Ctr., Inc., 51 S.W.3d 643, 667 (Tex.
App.-Corpus Christi 2001, no pet.); Blonstein v. Blonstein, 831 S.W.2d 468, 471 (Tex.
App.-Houston [14th Dist.]), writ denied, 848 S.W.2d 82 (Tex. 1992) (per curiam). The
reviewing court must view the evidence and inferences in the light most favorable to the
party with the burden of securing the finding, disregarding all evidence and inferences to
the contrary. Murphy v. Seabarge, Ltd., 868 S.W.2d 929, 933 (Tex. App.-Houston [14th
Dist.] 1994, writ denied). If there is any evidence of probative value to support the
question, the trial court may not refuse to submit the issue to the jury. K-Mart Corp. v.
Pearson, 818 S.W.2d 410, 413 (Tex. App.-Houston [1st Dist.] 1991, no writ). 

 Evidence of simple negligence alone is not enough to establish the second statutory
definition of malice. See Moriel, 879 S.W.2d at 21-23; N. Am. Van Lines, Inc. v. Emmons,
50 S.W.3d 103, 128 (Tex. App.-Beaumont 2001, no pet.). The dispositive question in this
regard is whether any of the evidence adduced shows not just negligence, but goes
beyond negligence into the realm of malice. 

 In support of this position, Celanese directs this Court to evidence that Waste
Management Industrial Services, Inc.'s employee, Lee Griffith, used a lower amount of
corrosion inhibitor in the flushing process, that he knew this could cause excessive
corrosion and damage the reactor, and that such damage could require substantial repair
to the reactor. The question is whether this reaches the elevated standard set out by the
definition of malice. 

 Moriel, however, explains that the harm to be anticipated from the conduct must be
extraordinary harm, which is further described as "death, grievous physical injury, or
financial ruin." Moriel, 879 S.W.2d at 24. An extreme degree of risk is required. A remote
possibility does not meet the test, and the conduct must create the likelihood of serious
injury. Serv-Air, Inc. v. Profitt, 18 S.W.3d 652 (Tex. App.-San Antonio 1999, pet. dism'd
by agr.). Exemplary damages are available for the purpose of punishing a defendant for
outrageous, malicious, or otherwise morally culpable conduct. Ellis County State Bank v.
Keever, 936 S.W.2d 683 (Tex. App.-Dallas 1996, no writ). 

 After reviewing the evidence set out above, we find nothing in this record that would
justify an instruction on malice. The evidence does show negligence, but there is no
evidence to show the requisite extreme degree of risk necessary to support malice.

 Celanese also contends the charge is erroneous because an improper measure of
damages was submitted to the jury. It contends the damage question did not address all
of the damages which naturally flowed from, and which were proximately caused by, Waste
Management's negligence. Specifically, it complains the charge did not address its claims
for lost profits and lost value to the catalyst used in the reactor, but instead only addressed
the difference in market value of the reactor immediately before and after the incident.

 At the charge conference, Celanese objected to the damage issue as follows: 
"Plaintiff objects to Question No. 3 of the Court's charge in that it submits an improper
measure of damages." 

 There was no other objection raised. That objection does not conform with the
complaint now raised on appeal. Celanese now contends, not that the measure of
damages was improper, but that it was incomplete. The change in market value of a piece
of personal property because of damage is a correct measure of damages in this type of
case. Thomas v. Oldham, 895 S.W.2d 352, 359 (Tex. 1995). It does not, however, include
additional elements of damage that may (or may not) exist in a particular case. 

 Tex. R. Civ. P. 274 provides, "A party objecting to a charge must point out distinctly
the objectionable matter and the grounds of the objection. Any complaint as to a question,
definition, or instruction, on account of any defect, omission, or fault in pleading, is waived
unless specifically included in the objections." There is only one test for determining if a
party has preserved error in the jury charge, and that is whether the party made the trial
court aware of the complaint, timely and plainly, and obtained a ruling. State Dep't of
Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 1992); De Leon v. Furr's
Supermarkets, Inc., 31 S.W.3d 297, 299 (Tex. App.-El Paso 2000, no pet.). In this case,
Celanese did not specify in what manner the damage issue was inadequate. Its objection
did not bring the present complaint before the trial court's attention.

 Further, since this contention of error is in the form of a complaint that the jury was
not adequately instructed about the proper measure of damages, Rule 278 is also
applicable. Rule 278 states that, "Failure to submit a definition or instruction shall not be
deemed a ground for reversal of the judgment unless a substantially correct definition or
instruction has been requested in writing and tendered by the party complaining of the
judgment." Tex. R. Civ. P. 278.

 Celanese also did not submit a proposed instruction containing any of the details
that would have involved the basis for the present complaint on appeal. The issue has not
been preserved for appellate review and, under the requirements of Rule 278, we may not
consider this issue as a ground for reversal.

 The judgment is affirmed.


 Donald R. Ross

 Justice


Date Submitted: February 28, 2002

Date Decided: March 21, 2002


Publish

1. This does not, of course, take into account other types of possible damages
resulting from the loss of use of the item pending repairs and similarly does not control
situations where the repairs do not, for some reason, return the item to a condition
matching that of the undamaged item, either in form or function. We would be reluctant
to say, for instance, that a Rembrandt painting that had been slashed by a vandal was
necessarily returned to its original condition after repairs. We recognize, however, it is not
only possible for such to occur, but that damaged artworks have likely been made
effectively perfect by repairs. Similarly, in most situations, a damaged piece of machinery
can be repaired and returned to full functionality. Where that is possible, the cost of repair
is a highly relevant piece of information.
2. See generally Sadler v. Duvall, 815 S.W.2d 285, 292 (Tex. App.-Texarkana 1991,
writ denied).

3. The malice definition in Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7)(B) (Vernon
1997) mirrors the court's definition of gross negligence as set out in Transp. Ins. Co. v.
Moriel, 879 S.W.2d 10, 23 (Tex. 1994).