**DILLARD DEPARTMENT STORES, INC., Appellant,**

v.

**Lyndon SILVA, Appellee.**

No. 06–02–00041–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 19, 2003.

Decided May 13, 2003.

Rehearing Overruled June 10, 2003.

Brock C. Akers, Neal D. Kieval, Phillips & Akers, PC, Houston, for appellant.

Don D. Becker, Carroll & Becker, Houston, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Dillard Department Stores, Inc. accused Lyndon Silva of shoplifting from its Town and Country Mall location in Houston. Silva was tried in criminal court for theft charges stemming from this incident and was found not guilty. After his acquittal, Silva brought a civil action against Dillard, alleging false imprisonment, malicious prosecution, intentional infliction of emotional distress, and negligence. A jury found Dillard liable for all the allegations brought by Silva, except malicious prosecution, and awarded Silva past and future damages of $10,124.01 and $3,000.00, respectively, and punitive damages of $50,000.00. Dillard contends the trial court erred in denying its motion for judgment notwithstanding the verdict or, alternatively, its motion for new trial, because there was no evidence or factually insufficient evidence to support the jury's findings of false imprisonment, intentional infliction of emotional distress, or negligence. Dillard also contends the trial court erred in denying these motions because there was no evidence or factually insufficient evidence to support the jury's actual and punitive damage awards.

Silva was a hairstylist and testified that, while working at his place of employment,

he received three shirts as a gift from a customer who has since returned to her native country. He explained that, because he and his roommate liked to dress alike, two of the three shirts were the same. Silva further testified he had his picture taken with the shirts at the salon where he worked. This picture was shown to the jury.

On June 12, 1997, Silva went to the Town and Country Mall in Houston, where one of his friends was opening a new hair salon. Silva also took the three shirts, because he and his roommate had decided to exchange them. After touring the new salon, Silva went to his car, retrieved the three shirts, and went to Dillard. Silva testified the customer who had given him the shirts had also given him the receipt with the gift, in case he wanted to exchange them.

Silva first attempted to return the shirts at the cosmetics/accessories counter, but was told he needed to exchange them at another department. While at the cosmetics/accessories counter, Silva purchased a back brush; the receipt indicated this purchase was made at 1:06 p.m. At 1:27 p.m., Silva purchased a Tommy Hilfiger shirt, making him eligible to purchase a Tommy Hilfiger travel bag being used as a promotional item. Another receipt indicated he purchased this travel bag at 1:31 p.m.

Silva testified he began to experience a headache and asked directions to the water fountain so he could take some medicine. According to Silva, a Dillard security guard, Kevin Rivera, stopped him while Silva was on his way to the water fountain. Rivera was an off-duty Houston police officer who was in uniform, with his "gun on [his] hip." Silva testified Rivera accused him of theft and placed him on the floor and handcuffed him. Silva said the officer emptied Silva's shopping bag onto the floor. Silva told the officer he had receipts for the items, including the three shirts. When the receipt for the shirts was not found in the bag, Silva said he begged the officer to go outside and check his car for the receipt. The officer instead took Silva, while handcuffed, up the escalator to an empty office. Silva said there were a lot of people watching. He also testified that no one asked him for an explanation and that, while in the office, the officer and a woman made fun of him. He stated that, when the city police arrived to take him into custody, Rivera again placed him on the floor with his knee in his back, and exchanged handcuffs with the city police. Silva said there were onlookers lined up to watch when he was escorted back downstairs and taken to the waiting police car.

Silva later produced a receipt for three shirts purchased at Dillard June 2, 1997. All three shirts were the same style and price as the three Silva was accused of stealing. However, two of the SKU numbers did not match exactly those written on Dillard's internal report about the incident.[1] Silva's explanations of these discrepancies between the SKU numbers included a difference in sizes (delineated by the end numbers of the SKU numbers), a sales clerk scanning one item multiple times instead of scanning the individual tags on similar items, and a misidentification of the merchandise.

The testimony of a Dillard's sales associate, Karen Wallace, was very different from Silva's. Wallace testified that, around 1:30 or 1:45 p.m. on the day in question, she noticed Silva and felt he was

---

1. Silva's receipt was for the following three SKU numbers: (1) 580–507 179604, (2) 580–507 179604, and (3) 765 460 072861. Dillard's civil recovery information report had recorded the numbers from the shirts as: (1) 580 507 0179604, (2) 580 507 0179606, and (3) 765 460 072874.

watching her more than shopping. She also noticed he had a large bag with him. Wallace later watched Silva take five or six items into a dressing room. When Silva came out of the dressing room, his bag appeared to be bigger and Wallace thought he did not return as many items to the rack as he had taken into the dressing room. On inspection, Wallace found two empty hangers and a nogo (anti-theft device) in the dressing room. After talking to the assistant manager, Wallace called security.

Rivera testified Silva was visibly nervous and shaking when he approached him. Rivera said he emptied the contents of Silva's bag on a nearby shelf or counter and denied emptying it on the floor. Rivera said Silva offered no excuse for not having a receipt for the three shirts. Rivera testified he placed Silva in handcuffs and conducted a pat-down search. He then took Silva to the store office to further investigate. Disputing Silva's testimony there were a lot of people watching, Rivera described the store as a "ghost town." Rivera testified Wallace was able to describe the items in the bag. Rivera talked to the district attorney's office, which agreed to press charges. After an exchange of handcuffs, Silva was turned over to the custody of the city police. Rivera denied forcing Silva to the floor at any time.

■ An appeal from the denial of a motion for directed verdict is in essence a challenge to the legal sufficiency of the evidence. *Haynes & Boone, L.L.P. v. Chason,* 81 S.W.3d 307, 309 (Tex.App.-Tyler 2001, pet. denied). In determining whether there is no evidence of probative force to support a jury's finding, all the record evidence must be considered in the light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in that party's favor. *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.*

■ When considering a factual sufficiency challenge to a jury's verdict, we must consider and weigh all the evidence, not just that which supports the verdict. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.1998). We can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.* at 407. When we review a punitive damage award, we must detail the relevant evidence in our opinion, explaining why that evidence either supports or does not support the punitive damage award. Tex. Civ. Prac. & Rem.Code Ann. § 41.013 (Vernon 1997). Factors to be considered when determining the amount of an award of exemplary damages include (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; (5) the extent to which such conduct offends a public sense of justice and propriety; and (6) the net worth of the defendant. Tex. Civ. Prac. & Rem.Code Ann. § 41.011 (Vernon 1997).

■ As its first point of error, Dillard contends the trial court erred in denying its motion for judgment notwithstanding the verdict, or alternatively, its motion for new trial, because there was no evidence, or only factually insufficient evidence, to

support the jury's finding of false imprisonment. To prevail under a false imprisonment claim, a plaintiff must prove (1) willful detention, (2) without consent, and (3) without authority of law. *Sears, Roebuck & Co. v. Castillo,* 693 S.W.2d 374, 375 (Tex.1985).

■ Dillard contends the third element is missing in this case. Dillard bases this contention on the shopkeeper's privilege created by Texas Civil Practice and Remedies Code Section 124.001. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 124.001 (Vernon 1997). The shopkeeper's privilege expressly grants an employee the authority of law to detain a customer to investigate the ownership of property, so long as (1) the employee has a reasonable belief the customer has stolen or is attempting to steal store merchandise, (2) the detention was for a reasonable amount of time, and (3) the detention was in a reasonable manner. *Wal–Mart Stores, Inc. v. Resendez,* 962 S.W.2d 539, 540 (Tex.1998). Dillard asserts there was no evidence Silva's detention was unreasonable.

In *Resendez,* the plaintiff sued Wal–Mart for negligence, false imprisonment, intentional infliction of emotional distress, and malicious prosecution. *Id.* The jury found no liability based on the malicious prosecution claim. *Id.* Because the jury found no basis for a malicious prosecution claim, the Texas Supreme Court held Wal–Mart's belief that Resendez had stolen or was attempting to steal store merchandise was necessarily reasonable. *Id.* In this case, the jury also found no liability based on the malicious prosecution; therefore, we must find Dillard's belief that items were being stolen as reasonable, as a matter of law.

The second component of the shopkeeper's privilege is whether the detention was for a reasonable amount of time. Silva testified he did not know the length of time

he was detained by Dillard. The last receipt obtained from Dillard by Silva was marked 1:31 p.m. Wallace testified she first noticed Silva around 1:30 or 1:45 p.m. She observed him for about fifteen minutes until he went into a dressing room for five or six minutes. Shortly after this, Silva was approached by Rivera and taken upstairs. The police report denotes the patrol officers arrived on the scene at 3:23 p.m. to transport Silva to jail.

Dillard contends the evidence shows Silva was detained for approximately one hour, perhaps a little longer. Silva agrees the detention lasted an hour or so. Dillard contends that, even if the detention was longer than an hour, there was no evidence this was an unreasonable amount of time for Rivera to question Silva and the store employees, and to talk with officers at the police department and prosecutors at the district attorney's office.

■ In *Resendez,* the court held the ten to fifteen minutes in that case was not unreasonable as a matter of law. *Id.* The court, however, made its decision "[w]ithout deciding the outer parameters of a permissible period of time under section 124.001." *Id.* Here, both sides agree the detention was for at least an hour. Considering the totality of the circumstances, we cannot say Silva was detained for an unreasonable length of time.

The third component of the shopkeeper's privilege is whether the detention was in a reasonable manner. Again, Dillard contends there was no evidence the detention was not reasonable. Silva testified, however, that Rivera accused him of theft and placed him on the floor and handcuffed him. Silva said the officer emptied Silva's shopping bag onto the floor. Silva testified people were around him when he was taken upstairs in handcuffs and when he was later escorted to the police car.

He further stated the officer and a woman made fun of him while he was being detained upstairs. Silva stated that, when the city police came to take him into custody, Rivera again placed him on the floor with his knee in his back and exchanged handcuffs with the city police. He further testified that he asked Rivera many times to check his car for the receipt, but these requests were ignored and that, during the entire time he was detained, no one asked him for any explanation. Dillard, on the other hand, points to Rivera's testimony, which "flatly contradicted Mr. Silva at every turn."

Silva's testimony provided the jury with evidence the detention was not conducted in a reasonable manner. Although the descriptions of the detention by Silva and Rivera were different, when parties introduce conflicting testimony in a jury trial, it is the duty of the jury to determine which witness is more credible. *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 866 (Tex. 1982). The verdict indicates the jury found Silva's story more credible than Rivera's.

■■■■ Generally, the reasonableness of a detention is a question of fact for the jury to decide. *See Wal–Mart Stores, Inc. v. Odem*, 929 S.W.2d 513, 520 (Tex.App.-San Antonio 1996, writ denied). Silva's testimony was more than a scintilla of evidence to support the jury's finding, and its verdict was not so contrary to the overwhelming weight of the evidence that it was clearly wrong and unjust. Dillard's first point of error is overruled.

■■■■ Dillard next contends the trial court erred in denying its motion for judgment notwithstanding the verdict or, alternatively, its motion for new trial, because there was no evidence, or only factually insufficient evidence, to support the jury's finding of intentional infliction of emotional distress. To prevail under an intentional infliction of emotional distress claim, a plaintiff must prove four elements: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress was severe. *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex.2000).

■■■■ When the Texas Supreme Court recognized the tort of intentional infliction of emotional distress, it specifically pointed out its trust for juries to resolve factual disputes giving rise to this tort. *Twyman v. Twyman*, 855 S.W.2d 619, 622 (Tex.1993). With respect to a defendant's intent, a jury is free to discredit the defendant's protestations that no harm was intended and to draw necessary inferences to establish intent. *Id.* at 623. With respect to recklessness, a jury may find a defendant acted recklessly if "he knows or has reason to know ... of facts which create a high degree of risk of ... harm to another, and deliberately proceeds to act, or fails to act, in conscious disregard of, or indifference to that risk." *Id.* at 624.

■■■■ Whether a defendant's conduct may reasonably be regarded as extreme and outrageous, however, is a question of law. *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex.1993). Liability for outrageous conduct should be found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Twyman*, 855 S.W.2d at 621.

■■■■ The Texas Supreme Court has greatly limited the availability of the tort of intentional infliction of emotional distress by holding that such tort is available only in those situations in which severe

emotional distress is the intended consequence or primary risk of the actor's conduct. *Standard Fruit & Vegetable Co. v. Johnson,* 985 S.W.2d 62, 67 (Tex.1998). Redress for this tort is available only when the tortfeasor desired or anticipated the plaintiff would suffer severe emotional distress. *Id.* Where emotional distress is solely derivative of or incidental to the intended or most likely consequence of the actor's conduct, recovery for such distress must be had, if at all, under some other tort doctrine. *Id.* A claim for intentional infliction of emotional distress cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort. *Id.* at 68.

Silva points to the following facts as evidence of Dillard's outrageous conduct: Silva was handcuffed, placed on the floor in front of other people, had his shopping bag dumped on the floor, was made fun of by Dillard's employees, was placed on the floor again while the handcuffs were exchanged, and was taken through a line of onlookers on his way to the police car. Silva also contends the most important evidence of Dillard's extreme and outrageous conduct is the fact "Dillard's *knew* before Mr. Silva was criminally prosecuted that Mr. Silva had done absolutely nothing wrong!" In support of his contention that Dillard knew of his innocence before his criminal trial ·began, Silva points to evidence that Dillard was shown the receipt for the shirts and was shown the photograph (taken at the salon) of him with the shirts. Silva contends:

> To subject a human being whom they knew to be innocent to potential liability of up to 180 eighty [sic] days in jail and a $2,000.00 fine when a simple telephone call would have ended the entire matter is outrageous, extreme in the degree, atrocious, utterly intolerable, and clearly goes beyond all bounds of decency.

Despite Silva's contention Dillard knew of his innocence at the time of his criminal trial, the jury found Dillard had probable cause to initiate criminal proceedings against him. This is evidenced by the jury's finding Dillard not liable on Silva's claim of malicious prosecution. Therefore, the fact Dillard initiated criminal proceedings against Silva cannot·constitute outrageous behavior.

The remaining actions by Dillard that Silva contends were extreme and outrageous were derivative of or incidental to Dillard's conduct in committing the tort of false imprisonment. Therefore, recovery by Silva for his distress resulting from such conduct must be had, if at all, under that tort doctrine. *See id.* at 67. Dillard's second point of error is sustained.

As its third point of error, Dillard contends the trial court erred in denying its motion for judgment notwithstanding the verdict or, alternatively, its motion for new trial, because there was no evidence, or only factually insufficient evidence, to support the jury's finding of negligence. To prevail under a negligence claim, a plaintiff must show (1) a legal duty, (2) a breach of that duty, and (3) damages proximately caused by the breach. *Van Horn v. Chambers,* 970 S.W.2d 542, 544 (Tex. 1998).

Silva contends that all of the following evidence supports the jury's finding of negligence on the part of Dillard:

1. The "obvious" incompetence of Wallace, the store clerk who testified she witnessed Silva stealing;

2. Dillard's negligence in hiring Wallace, when Wallace lied on her resume by stating she had completed seventy-two credit hours at the University of Texas, and when Wallace's only training

in loss prevention consisted of viewing a videotape;

3. Wallace's negligence in making the initial report to Rivera that Silva had stolen something; and

4. Dillard's failure to investigate Silva's repeated claims of innocence (both at the time of the incident and before the criminal trial when Dillard was presented with alleged proof of his innocence).

Dillard contends Silva alleged negligence in his pleadings in only two respects: the hiring of Wallace, the sales associate who reported the suspected shoplifting, and Dillard's failure to institute store policies to prevent these types of occurrences. Dillard acknowledges an employer has a duty to adequately supervise and train its employees. *See Allen v. A & T Transp. Co.*, 79 S.W.3d 65, 70 (Tex.App.-Texarkana 2002, pet. denied). But, Dillard maintains any judgment based on negligent supervision or training cannot be supported by Silva's pleadings. *See* Tex.R. Civ. P. 301. We agree with Dillard's reading of Silva's pleadings. Because Silva is limited to the types of negligence alleged in his pleadings, we cannot affirm any finding of negligence based on negligent training or supervision of Dillard's employees. We therefore will limit our discussion to negligence based on what Silva alleged was Dillard's negligent hiring of Wallace and Dillard's failure to implement proper security procedures.

■ Silva offered no evidence to show Wallace was incompetent or that Dillard was negligent in hiring her. Silva blames Wallace for what happened to him because she is the one who started the incident by reporting her suspicions. Silva relies on being found not guilty at the resulting criminal trial to prove she was unfit for her job. However, as noted earlier, the jury found Dillard was not liable with respect to the claim of malicious prosecution.

Moreover, when the jury was asked to assign percentages concerning the amount of contributory negligence attributable to Wallace, Dillard, and Silva, the jury found Dillard sixty percent at fault and Silva forty percent at fault, but attributed no fault to Wallace. Because the jury found Wallace was not negligent in this case, Dillard was not negligent in hiring her with respect to the same facts.

As to Dillard's procedures, the following portions of Dillard's manual of rules and procedures were read into the record by Rivera:

"Apprehension. Number One, The person must be observed in the actual removal and/or concealment of merchandise. If merchandise is being taken into a fitting room he must establish concealment by observing customer and merchandise count and description taken into and from the fitting room."

. . . .

[Number Two:] "Where possible constant observation of the suspect must be maintained by you, the security officer, or Dillard associates until the apprehension is made."

. . . .

[Number Three:] "Usually and unless local laws permit otherwise the suspect must be permitted to exit the premises prior to apprehension."

. . . .

Investigation number one: "You must act in a professional manner at all times."

. . . .

No. 2, "Touching suspect in any manner should be avoided unless it becomes necessary to maintain order in the particular situation. Handcuffs should not be used unless suspect poses threat to customers or your own personnel."

. . . .

Number Three: "You may detain a suspect for a reasonable amount of time in order to conduct a reasonable investigation. If you determine there was no crime committed, terminate the contact with the customer and apologize for the inconvenience. If the customer wishes to make a complaint, refer them to the manager only."

Additional evidence from the rules and procedures manual showed it was Dillard's policy for the security personnel to prepare thorough investigation reports of any incident and to retain any evidence from the incident in a secured area, with all sales or price tags kept as if the merchandise was to be returned to the floor. The record also contained evidence that Dillard showed its employees a videotape about store security at the time they were hired. Moreover, the testimony showed that, before Wallace called Rivera to report her suspicions, she called her supervisor, who then instructed her to call security.

Silva argues inadequate procedures, but fails to identify those particular procedures he deems inadequate. We find from the evidence that Dillard did have and implemented adequate procedures. Dillard's third point of error is sustained.

Dillard next contends the trial court erred in denying its motion for judgment notwithstanding the verdict or, alternatively, its motion for new trial, because there was no evidence, or only factually insufficient evidence, to support the jury's actual damages award.

■■■ In addressing damages, the jury was instructed to consider the following elements: physical pain and mental anguish, attorney's fees incurred in the original criminal proceeding, and attorney's fees in the expunction proceeding. Considering those four things, the jury was then asked to fill in a dollar amount for past damages and for future damages.

The jury answered $10,124.01 for past damages and $3,000.00 for future damages. When a damages issue is submitted in broad-form, an appellate court cannot ascertain with certainty what amount is attributable to each element. *Excel Corp. v. Porras,* 14 S.W.3d 307, 314 (Tex.App.-Corpus Christi 1999, pet. denied).

Dillard contests these awards because they are based, at least in part, on Silva's past and future legal expenses in connection with the criminal proceeding instituted against him for which Dillard was found not liable. Dillard also contends the record is totally devoid of any evidence to support an award for physical pain. We agree. However, because this was a broad-form question which allowed the jury to provide a single answer for Silva's physical pain and mental anguish, and his past legal fees, we still must address whether there was evidence of mental anguish.

■■■ In order to recover for mental anguish, a plaintiff must offer either direct evidence of the nature, duration, or severity of his or her anguish, thus establishing a substantial disruption in the plaintiff's daily routine, or other evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. *Saenz v. Fid. & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996). Mental anguish does include mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair, and/or public humiliation. *McLure v. Tiller,* 63 S.W.3d 72, 84 (Tex.App.-El Paso 2001, pet. filed). Recovery is warranted in such cases where the plaintiff's mental pain has risen to such a level that it has rendered him or her incapable of dealing with certain everyday activities. *Id.* For instance, as a result of

the mental pain, the plaintiff suffers from a myriad of negative emotions; some of these emotions may manifest themselves in such a way as to make it difficult for the plaintiff to eat, sleep, work, socially interact, or carry on any other activity which, until the time of the alleged injury, he or she could accomplish on a day-to-day basis without difficulty. *Id.*

■ In this case, there was evidence that the incident had affected Silva in a greater way than mere worry, anxiety, vexation, embarrassment, or anger. Several witnesses testified that before the incident Silva was always happy, but after the incident his personality changed. Silva's roommate testified Silva experienced nightmares as a result of the incident. He testified Silva would cry about what had happened to him. There was testimony of activities that Silva enjoyed before this incident, such as shopping and dancing, that he no longer likes to do. Silva testified he suffered from depression because of this incident. He further testified this incident caused him to lose his pride, "his dignity [as] a citizen." This evidence is sufficient to support the jury's award of past and future damages for mental anguish. Because the damages question submitted to the jury was broad, evidence to support one of the elements is enough to support recovery of the award. Dillard's fourth point of error is overruled.

■ Dillard also contends the trial court erred in denying its motion for judgment notwithstanding the verdict or, alternatively, its motion for new trial, because there was no evidence, or only factually insufficient evidence, to support the jury's punitive damage award. The jury found Dillard's conduct resulted from malice and awarded $50,000.00 in punitive damages.

To recover exemplary damages in this case, Silva was required to prove by clear and convincing evidence that the harm suffered resulted from malice. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(a)(2) (Vernon 1997). Malice means a specific intent by the defendant to cause substantial injury to the claimant; or an act or omission which, when viewed objectively from the standpoint of the actor at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and of which the actor had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(7) (Vernon 1997).

The determination of whether to award exemplary damages and the amount of exemplary damages to be awarded is within the discretion of the trier of fact. TEX. CIV. PRAC. & REM.CODE ANN. § 41.010 (Vernon 1997). We are not free to reweigh the evidence and set aside a jury's verdict merely because we feel a different result is more reasonable. *Ellis County State Bank v. Keever*, 936 S.W.2d 683, 685 (Tex. App.-Dallas 1996, no writ).

The dissent contends the evidence is legally insufficient to sustain the punitive damage award and asserts support for that position in the jury's finding that Dillard did not maliciously prosecute Silva. The trial court, however, was careful to instruct the jury that the definition of "malice" given in that question applied only "in this specific question." Likewise, in submitting the predicate question for punitive damages, the court instructed the jury to apply the statutory definition of "malice" in that question only "as used in this specific question." In applying those two definitions of "malice," it was not inconsistent-as implied by the dissent-for the jury to find that Dillard maliciously caused harm to Silva in its unreasonable detention of him,

and also find that Dillard did not maliciously prosecute him.

The dissent also contends the jury's finding that Silva was contributorily negligent supports the position that the evidence is legally insufficient to sustain the punitive damage award and concludes Silva had been adequately compensated by the actual damages the jury awarded.

It should be noted we have held against Silva on his negligence theory of recovery. But, even if we had held otherwise, the dissent's position is untenable because the comparative negligence statute does not bar recovery of punitive damages. *Anderson v. Trent,* 685 S.W.2d 712 (Tex. App.-Dallas 1984, writ ref'd n.r.e.). In *Anderson,* the Dallas court wrote:

> [T]he paramount purpose for awarding exemplary damages is *not* to compensate the plaintiff, but to punish and set an example for others. Consequently, it is incorrect to view the award of exemplary damages from the eyes of the recovering plaintiff; rather, the award should be viewed from the eyes of public policy.

*Id.* at 714 (citations omitted).

We find that the evidence supporting the punitive damage award in the instant case is legally and factually sufficient and, viewed "from the eyes of public policy," it is not excessive. When considering whether punitive damages are excessive, we must consider: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; and (5) the extent to which such conduct offends a public sense of justice and propriety. *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981).

Here, the nature of the wrong was the emotional harm Silva sustained as a result of this incident at Dillard. Silva's personality changed after the incident. He no longer liked to do the same things, like shopping and dancing, that he enjoyed before the incident. Silva experienced nightmares and testified this incident at Dillard caused him to be depressed. Silva's roommate testified about Silva crying. Silva also lost weight and sleep because of this incident. He said he could not face his friends or do his work. He said this incident caused him to lose "his dignity [as] a citizen."

The character of the conduct involved and the degree of the wrongdoer's culpability refer to evidence of Dillard's state of mind, the degree of its conscious indifference, and any malice in its actions. *See Keever,* 936 S.W.2d at 687. The jury was instructed that malice means a specific intent by Dillard to cause substantial injury to Silva; or an act or omission by Dillard, which when viewed objectively from Dillard's standpoint at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which Dillard had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. Under this definition, the jury concluded Dillard acted with malice. Although Rivera and Silva told different versions of what happened, it was up to the jury to decide which version of events to believe. *See Jones,* 638 S.W.2d at 866.

Silva testified Rivera prevented him from taking medication for a migraine headache, handcuffed him, placed him on the floor in front of other people, dumped his shopping bag on the floor, made fun of him as he sat in the office, placed him on the floor again while the handcuffs were exchanged, put his knee in his back, and then took him through a line of onlookers

on the way to a waiting police car. Silva further testified that no one asked him for an explanation and that he told Rivera many times he had receipts for everything. While being led to the police car, Silva was crying and still begging to be allowed to go to his car for the receipts.

The situation and sensibilities of the parties concerned refers to evidence of such things as remorse, remedial measures, and ability to pay the punitive damages. *Keever*, 936 S.W.2d at 688. There was no remorse on the part of Dillard evidenced in the record. Dillard still denies the incident took place as Silva described. There was evidence Rivera no longer works for Dillard; however, he testified this had nothing to do with his handling of this incident, and no controverting evidence was introduced.

Finally, we examine the evidence in light of the extent to which the conduct offends a public sense of justice and propriety. We conclude a rational jury could have found Dillard's behavior in this incident offended the public sense of justice and propriety. *See Rice Food Mkts., Inc. v. Ramirez*, 59 S.W.3d 726 (Tex.App.-Amarillo 2001, no pet.). Dillard's fifth point of error is overruled.

We reverse the judgment to the extent it adjudges Dillard liable for intentional infliction of emotional stress or for negligence. We affirm the judgment in all other respects.

Dissenting Opinion by Justice CARTER.

CARTER, Justice, dissenting.

I do not believe the evidence is legally sufficient to sustain the punitive damage award.

To support exemplary damages, a plaintiff must prove by clear and convincing evidence that the harm resulted from malice. The first prong of malice requires proof of an act or omission that involved an extreme degree of risk. Tex. Civ. Prac. & Rem.Code Ann. § 41.001(7)(B)(i) (Vernon 1997).

This Court has previously stated that *Moriel* explains that the harm to be anticipated from the conduct must be extraordinary harm, which is further described as "death, grievous physical injury, or financial ruin." *Celanese Ltd. v. Chem. Waste Mgmt., Inc.*, 75 S.W.3d 593, 600 (Tex.App.-Texarkana 2002, pet. denied) (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 24 (Tex.1994)). An extreme degree of risk is required. A remote possibility does not meet the test, and the conduct must create a likelihood of serious injury. *Universal Servs. Co. v. Ung*, 904 S.W.2d 638, 641 (Tex.1995). Exemplary damages are available for the purpose of punishing a defendant for outrageous, malicious, or otherwise morally culpable conduct. *Celanese Ltd.*, 75 S.W.3d at 600. The extreme degree of risk factor is a significantly higher standard than the reasonable person test for ordinary negligence. *Moriel*, 879 S.W.2d at 22. To determine if acts or omissions involve extreme risks, we must analyze the events and circumstances from the defendant's perspective at the time the harm occurred, without resorting to hindsight. *Id.* at 23. An extreme risk of harm is a function of both the magnitude and the probability of the anticipated injury to the plaintiff. The extreme risk prong is not satisfied by a remote possibility or injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff. *Id.* at 22. This objective element is the distinguishing feature between conduct which is deserving of punishment and that which merely demands restitution. *Wal–Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex.1993).

In analyzing this matter from the defendant's perspective at the time, as we are required to do, without resorting to hindsight, it cannot be said that the defendant created an extreme degree of risk by its actions. By statute, Dillard Department Stores, Inc. is authorized to detain persons it reasonably believes have stolen or are attempting to steal property in a reasonable manner and for a reasonable time to investigate ownership of the property. TEX. CIV. PRAC. & REM.CODE ANN. § 124.001 (Vernon 1997). The jury found that such detention was not reasonable and awarded Lyndon Silva damages he incurred. However, the jury also found that Dillard did not maliciously prosecute Silva after being instructed in that question that malice meant "ill will, bad or evil motive, or such gross indifference to the rights of others as to amount to a willful or wanton act." Silva was found negligent, and the jury attributed forty percent of the cause of the occurrence to him. The question in this case is did Dillard's actions rise to the level of outrageous, malicious, or otherwise morally culpable conduct which should be punished. *Ellis County State Bank v. Keever*, 936 S.W.2d 683 (Tex.App.-Dallas 1996, no writ).

Viewed in the light most favorable to Silva, the evidence shows Silva was suspected of shoplifting, detained, handcuffed, placed on the floor, and taken to a police car as onlookers watched. This action does not pose such an extreme degree of risk as to create a likelihood of serious injury. It is rather, at most, conduct that the law considers wrong, but not a "most exceptional case."

The jury awarded Silva damages for physical pain and mental anguish in the past and in reasonable probability will be sustained in the future and attorney's fees in the total sum of $13,124.01. These damages recompense Silva.

However, "[t]o be malicious, the act not only must be unlawful, but it must also be of a wanton and malicious nature, or somewhat of a criminal or wanton nature. Whereas every tort involves conduct that the law considers wrong, punitive damages are proper only in the most exceptional of cases." *C & D Robotics, Inc. v. Mann*, 47 S.W.3d 194, 201 (Tex.App.-Texarkana 2001, no pet.) (citing *Moriel*, 879 S.W.2d at 18). There is no more than a scintilla of evidence in the record supporting a finding that Dillard created an extreme degree of risk of serious injury of such magnitude as to be deserving of punishment.

Likewise, I do not believe there is any clear and convincing evidence that Dillard was consciously indifferent to Silva's rights or welfare. Silva argues that the "most important" evidence of Dillard's conscious indifference is its failure to ask the State to dismiss charges against Silva. However, the jury absolved Dillard of any liability for malicious prosecution.

Based on the above, I do not believe that there is legally sufficient evidence to conclude clearly and convincingly that Silva suffered harm as a result of malice. I concur in all other portions of the opinion.