NO. 07-02-0366-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



DECEMBER 9, 2003



______________________________




RONALD J. HETTLER, ROBIN HETTLER AND CORNWALL PERSONAL



INSURANCE AGENCY, INC. F/D/B/A HETTLER-BRENHOLTZ INSURANCE, 



APPELLANTS



V.



WILLIAM DAVID BRENHOLTZ, APPELLEE




_________________________________



FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 97-558,843; HONORABLE BRADLEY S. UNDERWOOD, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.


MEMORANDUM OPINION



 Presenting eight points of error, Ronald J. Hettler, Robin Hettler, and Cornwall
Personal Insurance Agency, Inc. f/d/b/a Hettler-Brenholtz Insurance (the Agency)
challenge the judgment following a jury trial that William David Brenholtz recover damages
for, among other claims, breach of contract, fraud, conversion, and interference with
business relationships. By points one through seven, they allege the trial court erred in
(1) denying their no-evidence motion for summary judgment; (2) soliciting and considering
oral testimony to determine the validity of the contract; (3) ruling that a document
constituted an enforceable contract between Brenholtz, Ronald, and the Agency as a
matter of law; (4) awarding damages for Ronald's breach of contract as insufficient
evidence existed to justify the award; (5) submitting an issue of fraud to the jury as to
Ronald in tort; (6) submitting liability issues in tort as to Robin as there was no evidence
she committed those torts; and (7) submitting the instruction as to exemplary damages as
it fails to instruct the jury what conduct could be considered to assess punitive damages. 
By their eighth point, they contend the punitive damages award was excessive. Based
upon the rationale expressed herein, we affirm. 

 Ronald and Brenholtz, licensed insurance agents, both worked for Cornwall Stevens
Southwest, Inc. When Ronald resigned from Cornwall in 1992, he purchased part of
Cornwall's book of business and started his own insurance agency. Also, in 1992,
Brenholtz resigned from Cornwall and purchased another part of the Cornwall book of
business. After their resignations and while operating independently, on occasion they
visited socially. Then, in 1994, the Agency, then owned and managed by Ronald, hired
Brenholtz and he brought his book of business to the firm. Ronald was President of the
corporation and Brenholtz was Vice President. They entered into an oral agreement at
that time, and on November 20, 1996, it was reduced to writing when they signed an
informal memorandum drafted by Brenholtz. Although Ronald claimed the memorandum
did not accurately reflect the original agreement in 1994, and was partially incomplete,
nevertheless, he signed it. Robin did accounting for the Agency out of her home, and in
1996, she became licensed as an insurance agent at Ronald's request because the
Agency was losing money. She commenced working in the office as an agent and
accountant in January 1997; however, she was not an officer of the corporation nor a
shareholder.

 Before the parties submitted the November 20 memorandum to counsel for formal
preparation, on February 13, 1997, Ronald sent Brenholtz a two-page handwritten letter
on Hettler-Brenholtz Insurance letterhead. The letter, which contained his final paycheck,
notified Brenholtz he was being terminated as of February 14 and transmitted an offer in
the form of a buy-sell agreement. Among other things, Brenholtz was informed as follows:


 he was no longer an employee;
 the staff had been instructed to deny him entry into the agency;
 the locks had been changed; and
 the police would be called if he showed up.



Then, on February 17, 1997, employees of the Agency commenced sending letters to
customers informing them that Brenholtz was no longer with the Agency and that "Ron
Hettler will now be servicing your insurance needs." 


 Based on the letter of termination, Brenholtz commenced the underlying action
against Ronald, Robin, and the Agency by seeking a temporary restraining order. He also
sought damages for breach of contract, fraud, conversion, interference with business
relationships, and an accounting. Following hearings on numerous matters, the trial
commenced on February 19, 2002. Based on the jury's findings, the trial court signed its
judgment that Brenholtz recover:


 $232,601 against Ronald and the Agency, jointly and severally;
 $10,000 against Ronald, Robin, and the Agency, jointly and severally;
 $200,000 against Ronald for exemplary damages;
 $200,000 against Robin for exemplary damages;
 $200,000 against the Agency for exemplary damages;



plus attorney's fees and interest.

 By their first point, Ronald, Robin, and the Agency contend the trial court erred in
denying their no-evidence motion for summary judgment. We disagree. As a general rule
the denial of a summary judgment is not reviewable on appeal because it is not a final
judgment. Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996). See also
comment to Rule 166a(i) Tex. R. Civ. P. (the denial of a motion under paragraph (i) is no
more reviewable by appeal or mandamus than the denial of a motion under paragraph (c)).
Point of error one is overruled.

 By point of error two, Ronald contends the trial court erred in considering oral
testimony when it granted Brenholtz's motion for partial summary judgment as to the
validity of the contract, and by his third point, (1) contends the trial court erred in ruling that
a document introduced into evidence constituted an enforceable contract. We disagree. 
The challenged document was admitted into evidence as Plaintiff's Exhibit 7, which can
best be described as a ten paragraph informal printed memorandum with handwritten
notations, about one-half page in length, dated November 20, 1996, and signed by Ronald
and Brenholtz. (2) 

 When the question was first presented by motion for partial summary judgment, the
trial court was of the opinion that an agreement did not exist and denied the motion. 
However, after hearing testimony during trial, the court announced it had changed its
decision and concluded that an agreement existed as a matter of law. Among other
instructions, as related to the contract issue, the jury was instructed as follows: 

 You are instructed that the court has found an agreement existed between
David Brenholtz and Ron Hettler. (3) 


 You must decide the meaning of the agreement by determining the intent of
the parties at the time of the agreement. Consider all the facts and
circumstances surrounding the making of the agreement, the interpretation
placed on the agreement by the parties, and the conduct of the parties.


Question No. 1 followed the instructions:

Question No. 1


 Did Ron Hettler fail to comply with the agreement?

 Answer "yes" or "no." 

 Answer: Yes 


By his pleadings, Ronald alleged the 1994 oral agreement was a contract of employment
by the Agency and by verified denial, expressly denied a partnership arrangement. On
appeal Ronald argues in part: 

 Brenholtz clearly is attempting to modify the original agreement made in
June 1994. There never was a partnership. 


Here, Ronald renews his admission that an agreement was made, but disputes it created
a partnership. The trial court has considerable discretion to determine necessary and
proper jury instructions. See Texas Workers' Comp. Ins. v. Mandlbauer, 34 S.W.3d 909,
911 (Tex. 2000). Moreover, by his points of error, Ronald does not assert charge error,
and as submitted, Question No. 1 was substantially similar to a question proposed by
Ronald's trial counsel. 

 The intention of the parties to an agreement is normally a question of fact. See
Scott v. Ingle Bros. Pacific, Inc., 489 S.W.2d 554, 555 (Tex. 1972). Also, in Ishin Speed
Sport, Inc. v. Rutherford, 933 S.W.2d 343, 348 (Tex.App.--Fort Worth 1996, no writ), the
court held:

 However, even if an offer and acceptance are not recorded on paper,
dealings between parties may result in an implied contract where the facts
show that the minds of the parties met on the terms of the contract without
any legally expressed agreement. Accordingly, the parties' conduct may
convey an objective assent to the terms of an agreement, and whether their
conduct evidences their agreement is a question to be resolved by the finder
of fact.


[Citations omitted]. However, whether an agreement is legally enforceable is a question
of law. Ronin v. Lerner, 7 S.W.3d 883, 886 (Tex.App.--Houston [1st Dist.] 1999, no pet.).

 The trial court did not instruct the jury that Plaintiff's Exhibit 7 contained the terms
of the agreement of the parties. Instead, the jury was only charged that an agreement was
made and was instructed to determine the intent of the parties. Indeed, Question No. 1
is a classic example of broad-form submission as authorized by Rule 277 of the Texas
Rules of Civil Procedure and is not challenged on appeal. Accordingly, considering that
Ronald did not plead the affirmative defense of statute of frauds applied to Plaintiff's
Exhibit 7, that Ronald, although contending a partnership did not exist, admitted an
agreement was made, that the trial court did not rule that Plaintiff's Exhibit 7 contained the
agreement of the parties, but submitted the question to the jury, issues two and three are
overruled. 

 By point of error four, Ronald contends the trial court erred in awarding damages
for his breach of contract as insufficient evidence existed to justify the award. Ronald's
challenge is based on his contention that the testimony and report of the certified public
accountant called by Brenholtz was insufficient to establish damages. Among other
claims, Ronald argues the accountant's calculations were based on improper methodology
and that the written report introduced at trial was not an audit report and was, in part,
based on hearsay. We disagree.

 A party cannot raise an objection to evidence for the first time on appeal. Tex. R.
App. P. 33.1(a); see also Prati v. New Prime, Inc., 949 S.W.2d 552, 554 (Tex.App.--Amarillo 1997, pet. denied). Also, a claim that an expert's testimony or report is unreliable
must be presented by objection to the evidence before or when offered at trial. See
Guadalupe-Blanco River Authority v. Kraft, 77 S.W.3d 805, 807 (Tex. 2002). Moreover,
under Rule 703 of the Texas Rules of Evidence, an expert opinion may be based in part
on facts or data "perceived by, reviewed by, or made known to the expert" provided they
are the type reasonably relied on by experts in the field. See Sosa By and Through Grant
v. Koshy, 961 S.W.2d 420, 424 (Tex.App.--Houston [1st Dist.] 1997, pet. denied). 
Because Ronald did not object to the testimony or evidence as required, point of error four
presents nothing for review and is overruled.

 By point of error five, Ronald contends the trial court erred in submitting the fraud
question to the jury. We disagree. The trial court instructed the jury that fraud occurs
when (a) a party makes a material misrepresentation, (b) the misrepresentation is made
with knowledge of its falsity or made recklessly without any knowledge of the truth and as
a positive assertion, (c) the misrepresentation is made with the intention that it should be
acted on by the other party, and (d) the other party acts in reliance on the
misrepresentation and thereby suffers injury. Ronald argues the evidence was insufficient
to support a finding of the element of reliance. He focuses his argument on the testimony
of a former co-worker that he intended to obtain Brenholtz's customers by the new
business association and that the co-worker warned Brenholtz of her concerns. Ronald
then argues that because there was no evidence of reliance, there could be no fraud as
a matter of law. He also argues there was insufficient evidence to show fraud because
Brenholtz admitted he received his book of business after termination; however,
Brenholtz's fraud claim was not based on the report of the former co-worker. 

 Brenholtz's allegation of fraud was grounded on Ronald's representation that (1)
profits would be allocated based on a full and fair accounting and (2) all Brenholtz's
customers existing at the time of the commencement of business and new customers
developed by Brenholtz would "remain Brenholtz's customers," however, Ronald does not
address the grounds of Brenholtz's fraud claim. The informal memorandum signed by the
parties addressed the question of customer accounts and rights thereto. It also provided
for division of profits proportionately based upon the personal production "as a percentage
of the whole each year" and for expenses accounts, car allowances, and reimbursements. 
Moreover, except for the reference to a "partnership," Ronald's testimony confirmed that
the terms of the agreement described in the memorandum substantially comported with
the terms of the 1994 oral agreement. Because Brenholtz's claim of fraud arose from the
provisions expressed or necessarily arising from the memorandum signed by the parties
and not the testimony of the co-worker, Ronald's fifth point is overruled.

 By point six, Robin contends the trial court erred in submitting liability issues in tort
as to her because there is no evidence she committed those torts. (4) We disagree. In his
response, Brenholtz contends Robin's contention is not preserved for appellate review.

 Objections to jury questions must be made before submission of the charge to the
jury and as we held in Hart v. Moore, 952 S.W.2d 90, 96 (Tex.App.--Amarillo 1997, pet.
denied), objections "must be sufficiently specific to afford the trial court an opportunity to
correct errors." In determining whether reversible error exists, in Bell v. Missouri-Kansas-Texas Railroad Co. of Texas, 334 S.W.2d 513, 516 (Tex.Civ.App.-- Fort Worth 1960, writ
ref'd n.r.e), the court held:

 [a] part of the tests to be applied involves the determination of whether the
complainant so sufficiently stated the same contention and reason therefor
in his objection to the trial court as to make it apparent that the trial court,
though fully cognizant of the ground of complaint, nevertheless chose to
submit the issue.


In Haley v. GPM Gas Corp., 80 S.W.3d 114, 119 (Tex.App.--Amarillo 2002, no pet.), we
held:

 Rule 274 of the Texas Rules of Civil Procedure requires that objections to
the charge must point out distinctly the objectionable matter and the grounds
of the objection, otherwise the objection is waived.


Further, Rule 33.1(a) of the Texas Rules of Appellate Procedure requires that in order to
preserve a complaint for our review, a party must distinctly specify an objection to the trial
court so the trial court and the other party will be advised of the objection. Thus, before
we consider the point of error, we must first determine whether Robin preserved her
complaint that there is no evidence she committed "those torts." (5) 

 Brenholtz's breach of contract and fraud claims against Ronald only were submitted
by Questions 1, 2, 5, and 6. Brenholtz's claims against Ronald, Robin, and the Agency 
for conversion and intentional interference with Brenholtz's existing customers and 
prospective business relations with his customers were submitted by Questions 3, 4, 7, 8,
9, and 10. At the charge conference, trial counsel for Ronald, Robin, and the Agency
commenced his objections by addressing the contract claim which involved Ronald only. 
Moving on to other questions, without naming Robin, he made broad form objections. For
example, regarding the conversion claim, he argued "Brenholtz received each and every
bit of his property. No matter what time it happened, he did have it all; and therefore, you
can't convert something that the other person already has." Then, as to the two
interference with business relationship issues, without designating Robin or any other
party, he argued the evidence simply pointed out that Brenholtz had all his "business
relationships" or that "all conduct against the defendants having occurred in the past, their
past conduct being-not being substantial enough or in existence to support future
business relationships."

 Robin does not argue that the question of her tortious conduct should have been
submitted by separate questions. Although the actions of Ronald and Robin were not
entirely common, the objections were not tailored to address the grounds of the individual
parties, resulting in some confusion and uncertainty. Further, the broad presentation did
not inform the court that notwithstanding the general nature of the objections, they were
being presented on behalf of Robin in her individual capacity. Considering that the charge
conference followed an eight day trial with over 100 documents admitted into evidence,
that multiple defendants were represented by the same attorney, that breach of contract
and four distinct tort claims were presented with not entirely common grounds among the
parties, and the presentation of objections, we conclude the objections were so "general
as to be almost meaningless." See Ron Craft Chevrolet, Inc. v. Davis, 836 S.W.2d 672,
675 (Tex.App.--El Paso 1992, writ denied). They were also inadequate to demonstrate
that the trial court was "fully cognizant of the ground of the complaint" and as such do not
distinctly specify the objections to the trial court. Bell, 334 S.W.2d at 516. Moreover,
Robin does not contend the trial court abused its discretion in submitting the tort questions. 
Texas Dept. of Human Services v. E.B., 802 S.W.2d 647, 649 (Tex. 1990). Point of error
six is overruled.

 By point seven, Ronald, Robin, and the Agency contend the trial court erred in
submitting the jury instruction on punitive damages in Questions 13 and 14 as it failed to
instruct the jury what conduct could be considered in assessing punitive damages. (6) We
disagree. By his response Brenholtz contends the point was not preserved for review. 
Thus, before we commence our analysis, we first review the objection at trial to determine 
whether Ronald, Robin, and the Agency objected to Questions 13 and 14 because an
accompanying instruction "instructing the jury what conduct that could be considered to
assess punitive damages" was not given.

 In addition to the authorities mentioned in our analysis of point six necessary to
preserve charge error for appellate review, the objection on appeal must comport with the
objection in the trial court. See Haley, 80 S.W.3d at 120. Charge error is not presented
on appeal because the instruction "fail[ed] to instruct the jury what conduct that could be
considered to assess punitive damages." Although our review of the record as referenced
shows a "no evidence challenge" was stated as to Question 13, and a no evidence
challenge as to evidence of "net worth" was also presented as to Question 14, trial counsel 
did not object to the absence of an instruction as to what conduct could be considered to
assess punitive damages. Accordingly, because the error claimed on appeal does not
comport with that presented in the trial court, alleged error, if any, was not preserved for
review. Point of error seven is overruled. 

 Ronald, Robin, and the Agency do not contend that the evidence was insufficient
to support the jury finding by clear and convincing evidence that the harm to Brenholtz
resulted from malice but by their point of error eight, contend only that the punitive
damages awarded were excessive. We disagree. 

 Given the procedural posture, we need not address the award of exemplary
damages but focus our review on the amount of the award. By argument in their brief and
reply brief, the Hettlers and the Agency rely on Southwestern Investment Company v.
Neely, 452 S.W.2d 705 (Tex. 1970), and Apache Corp. v. Moore, 960 S.W.2d 746
(Tex.App.-Amarillo 1997, writ denied), and request that this Court make a suggestion of
remittitur. Even though they do not contend the jury abused its discretion or address the
law and factors contained in Tex. Civ. Prac. & Rem. Code Ann. §§ 41.001-41.013 (Vernon
1997 & Supp. 2004), which is the controlling law, to the extent applicable we will consider
the point.

 Causes of action involving exemplary damages that accrued after September 1,
1995, are now governed by statute. See Tex. Civ. Prac. & Rem. Code Ann. §§ 41.001 -
41.013 (Vernon 1997 & Supp. 2004). (7) Subject to the limitations in section 41.008 of the
Code, the Legislature has directed that the amount of exemplary damages to be awarded
is within the discretion of the jury. See § 41.010(b). The award should not be set aside
as excessive unless the amount is so large as to indicate that it is the result of passion,
prejudice, or corruption, or that the evidence has been disregarded. Ethicon, Inc. v.
Martinez, 835 S.W.2d 826, 835 (Tex.App.-Austin 1992, writ denied). When reviewing an
award of exemplary damages, we are not free to reweigh the evidence and set aside a jury
verdict merely because we feel that a different result is more reasonable. Ellis County
State Bank v. Keever, 936 S.W.2d 683, 685 (Tex.App.-Dallas 1996, no writ), citing Pool
v. Ford Motor Co., 715 S.W.2d 629, 634 (Tex. 1986); see also Dillard Dept. Stores, Inc.
v. Silva, 106 S.W.3d 789, 801 (Tex.App.-Texarkana 2003, pet. filed Jul. 22, 2003).

 The purpose of awarding exemplary damages is to punish and deter the wrongful
conduct. § 41.001(5); see also Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 16-17
(Tex. 1994). Factors to consider in determining the amount of exemplary damages
include:

 (1) the nature of the wrong;

 (2) the character of the conduct involved;

 (3) the degree of culpability of the wrongdoer;

 (4) the situation and sensibilities of the parties concerned;

 (5) the extent to which such conduct offends a public sense of justice and
propriety; and

 (6) the net worth of the defendant.


§ 41.011(a); see also Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981). 

 An award of exemplary damages must be based on clear and convincing evidence
(i.e., that measure or degree of proof which will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be established). §§
41.001(2) & 41.003. However, the clear and convincing standard does not alter the rules
generally applicable when appellate courts review the sufficiency of the jury's findings. In
Re M.D.S., 1 S.W.3d 190, 197 (Tex.App.-Amarillo 1999, no pet.). Further, in our review
of the amount of exemplary damages we must address the evidence or lack thereof with
specificity. § 41.013(a).

 Ronald testified that his relationship with Brenholtz was as "good of friends as you
could have," although they did not socialize outside the office. Robin also testified that
Ronald considered Brenholtz a good friend and that the decision to terminate him was
difficult. By late 1994, the Agency was running smoothly with Ronald as President and
Brenholtz as Vice President. Both Ronald and Robin testified that Robin agreed Brenholtz
could work at the Agency as long as he was not an owner or shareholder. Several
witnesses testified that Brenholtz was a good agent and was always taking care of his
customers. His accounts varied from commercial to personal lines. At the inception of the
business relationship, Robin did the accounting at home without a salary. The evidence
also established that the Agency did not have much office space available for Robin. The
Agency also employed several customer service representatives (CSR).

 Several witnesses testified that commissions were tracked through an Agency
Management System (AMS) which listed producer codes for an account by initials (i.e.,
WDB for Brenholtz, RJH for Ronald, and AGY for accounts produced by the Agency). 
According to Robin, in 1996, Ronald informed her that the Agency was losing money and
he suggested she get licensed as an agent. Soon after Robin began working in the office,
she and Brenholtz had personality differences. 

 In early 1997, Lynda Emanuel, an underwriter and CSR, ran a customer list on the
AMS and noticed that producer codes on some of Brenholtz's accounts had been changed
to reflect either Ronald or the Agency as producers. She informed Brenholtz and he
confronted Ronald and they argued. Emanuel heard Robin claim that Brenholtz would not
be receiving a paycheck because he was not producing, although she knew Brenholtz was
producing. Another CSR also testified she discovered some producer codes had been
changed from Brenholtz to Ronald and when she attempted to make corrections, she
noticed the security clearance had been changed. The CSRs were locked out of the AMS
and instructed not to run anymore client lists.

 On February 13, 1997, Ronald wrote Brenholtz a handwritten letter notifying him
that as of February 14, he was terminated. Ronald began the letter, "I love you. But this
isn't working. . . . I've instructed the staff to not allow you into the premises, the locks have
been changed, and you are no longer an employee of this agency. (They will call police
if you show up)." The letter is signed, "Your friend, Ron Hettler." 

 Brenholtz immediately obtained a temporary injunction restraining Ronald and the
Agency from, among other things, contacting any of Brenholtz's clients, discussing his
status with any person other than corporate officers or counsel who need to know, and
informing any person that Ronald and the Agency are not aware of how to contact
Brenholtz. The injunction also required immediate delivery to Brenholtz of any customer
files, correspondence, or personal property.

 A retired insurance broker testified that an agent's book of business is a very
valuable commodity. A marketing representative who worked for the Agency for a brief
period testified that Ronald brought Brenholtz into the Agency because he would
eventually own his book of business.

 One of Brenholtz's customers testified that after the termination date, he telephoned
the Agency, where the phone was answered "Hettler-Brenholtz" and was not informed that
Brenholtz was no longer there. Robin dealt with the customer and sent him a letter dated
June 30, 1997, still reflecting "Hettler-Brenholtz" on the letterhead. The yellow pages of
the telephone directory also carried Brenholtz's name as part of the Agency in 1997 -
1998, and as late as 1998, the corporate franchise tax return for the Agency continued to
list Brenholtz as Vice President. 

 A CSR who worked at the Agency between 1995 and 1997, and who quit on the
date Brenholtz was locked out, testified that Robin told her to inform an individual who had
done some marketing in the Agency not to do business with Brenholtz. Evidence was also
presented that Brenholtz's parents' homeowners policy was canceled at Ronald's request
and had also been coded as Ronald's account. Robin sent facsimilies to companies
regarding approximately 10-15 other accounts belonging to Brenholtz with instructions to
either cancel or not renew them. 

 Other instances of questionable conduct include:


 (1) Ronald reported Brenholtz to law enforcement for a theft claim for
employee dishonesty;

 (2) Brenholtz's mail was not being forwarded regularly as required by the
temporary injunction;

 (3) Ronald used Agency funds to pay his children's country club dues and
Robin's golf dues;

 (4) Ronald did not obey the injunction to refrain from sending letters to
Brenholtz's clients; and

 (5) Brenholtz did not receive all of his files until August 15, 1997, which
made it difficult to conduct his business; according to Brenholtz's employee,
the files were "messed up."


Evidence was also presented that an agent needs his name in order to do business, and
Ronald, Robin, and the Agency continued to carry Brenholtz's name in some aspects of
their business. 

 The jurors were the sole judges of the credibility of the witnesses and the weight to
be given their testimony. Also, according to section 41.010, the amount of an award of
exemplary damages was not prescribed by a formula or objective criteria, but was to be
an amount to be determined within the discretion of the jurors, subject to other provisions
of the Code. Considering the multiple acts of questionable conduct which the jury could
have deemed to be malicious and harmful to Brenholtz, that the jury was properly charged
per the factors, and based on this cold record, we do not agree that the jury abused its
discretion nor that the amount of the awards were excessive. Point of error eight is
overruled. 

 Accordingly, the judgment of the trial court is affirmed. 

 Don H. Reavis

 Justice


1. We will consider points 2 and 3 together.
2. In summary, the document provided

 Stated partnership agreement between parties, as discussed and agreed to before 6/1/94.

 Ron "brings" certain assets, furniture, etc.

 David brings his current business assets including markets, furniture, customers, etc.

 Each to retain ownership of assets and new customers.

 Ron retains 100% of stock subject to his purchase agreement.

 Ron is president and David is vice president. No other corporate officers.

 Agency to purchase key man insurance on Ron and David.

 Profits to be shared proportionately based upon personal production. 

 Each to have expense accounts for normal business and car allowance.
3. The instruction made no reference to Robin or the Agency.
4. Ronald and the Agency do not join in this point of error.
5. Because Ronald and the Agency do not challenge the tort findings, we need not consider whether they
preserved any objections.
6. This point overlooks that jury question 14 properly listed the 6 factors for the jury to consider per § 41.011(a).
7. See Act of April 11, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108.